IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AVENUE LOFTS CONDOMINIUMS                    3:13-CV-01066-BR
OWNERS' ASSOCIATION, an
Oregon nonprofit corporation,               OPINION AND ORDER

      Plaintiff,

v.

VICTAULIC COMPANY, a foreign
corporation,

      Defendant.

MICHELLE K. McCLURE
STUART K. COHEN
Landye Bennett Blumstein, LLP
3500 Wells Fargo Center
1300 S.W. Fifth Avenue
Suite 3500
Portland, OR 97201
(503) 224-4100

RICHARD N. SIEVING
JENNIFER L. SNODGRASS
The Sieving Law Firm, A.P.C.
100 Howe Avenue
Suite 220N
Sacramento, CA 95825
(916) 444-3366

      Attorneys for Plaintiff

1 - OPINION AND ORDER

**ANNE COHEN**
Smith Freed & Eberhard
111 SW Fifth Avenue
Suite 4300
Portland, OR 97204
(503) 227-2424

      Attorneys for Defendant

**BROWN, Judge.**

    This matter comes before the Court on Defendant Victaulic Company's Motion (#85) to Dismiss Claims for Fraud [Fifth Claim], Negligent Misrepresentation [Sixth Claim], and Violation of the UTPA [Fourth Claim] and Motion (#85) to Strike Punitive Damages. For the reasons that follow, the Court **GRANTS** Defendant's Motions.

<u>BACKGROUND</u>

    The following facts are taken from the First Amended Complaint of Plaintiff Avenue Lofts Condominiums Owners' Association, Defendant's Memorandum in Support of its Motion to Dismiss, and Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss.

    Plaintiff is an Oregon nonprofit corporation and the governing body of the Avenue Lofts Condominium (the Condominium). The Condominium consists of 169 living units, 186 parking units, and 88 storage units.  Construction on the Condominium was completed in 2004.

2 - OPINION AND ORDER

Defendant is a New Jersey corporation and at all relevant times manufactured, marketed, and supplied valves, pipe couplings, gaskets, and fittings to suppliers and installers for use in their businesses.

At some point before 2004 developer Evergreen M&F, LLC, hired Howard S. Wright Construction (HSW) as general contractor for the Condominium.  HSW contracted with MSI to install the plumbing systems for the Condominium.  MSI purchased plumbing components (including products manufactured by Defendant) from third-party distributor Ferguson.  MSI then installed Defendant's products in the Condominium as part of the plumbing system.

At some point the

> potable water piping system installed throughout
> the CONDOMINIUM[, which] includes VICTAULIC
> PRODUCTS[,] . . . prematurely deteriorated and
> failed or otherwise failed to properly perform.
> Among other things, the VICTAULIC PRODUCTS have
> become brittle, cracked, softened, deteriorated
> and disintegrated.  The deterioration of the
> VICTAULIC PRODUCTS has caused water intrusion,
> pipe bursts and property damage to components of
> the CONDOMINIUM's General Common Elements . . . by
> causing damage to the potable water system itself,
> appliances, fixtures, walls, insulation, floor,
> drywall and the interiors of the living units.  As
> deterioration and failure of the VICTAULIC
> PRODUCTS progresses, further widespread water
> intrusion and property damage is occurring.

First Am. Compl. at ¶ 35.

On June 25, 2013, Plaintiff filed a Complaint against Defendant in this Court in which it brought claims for (1) strict products liability; (2) negligence; (3) breach of express

warranty; (4) violation of Oregon's Consumer Warranty Act (CWA), Oregon Revised Statute § 72.8180; (5) violation of Oregon's Unlawful Trade Practices Act (UTPA), Oregon Revised Statute § 646.608(1)(e), (g), and (t); (6) fraud; and (7) negligent misrepresentation.

Before this action was filed, Plaintiff's counsel filed an action against Defendant on February 25, 2013, on behalf of Edge Lofts Master Condominium Association (the *Edge Lofts* action) in Multnomah County Circuit Court in which the plaintiffs alleged claims against Defendant based on facts similar to those alleged by Plaintiff against Defendant in this case.  On March 22, 2013, Defendant removed the matter to the United States District Court for the District of Oregon, and the case was assigned to Judge Michael Mosman.  On June 10, 2013, Defendant filed a Motion to Dismiss the *Edge Loft* action in which it sought dismissal of, among other things, the plaintiff's claims for violation of the UTPA, fraud, and negligent misrepresentation.

Plaintiff's counsel also filed a Complaint against Defendant on June 17, 2013, on behalf of Benson Tower Condominium Owners Association (the *Benson* action) in the United States District Court for the District of Oregon in which the plaintiffs alleged claims against Defendant based on facts similar to those alleged by Plaintiff against Defendant in this matter and the facts alleged by the plaintiffs in the *Edge Lofts* action.  The *Benson*

action was assigned to Judge Michael Simon.

On July 29, 2013, Defendant filed Motions for Centralized Pre-Trial Proceedings in each of the above three cases.

On August 7, 2013, Judge Mosman granted Defendant's Motions for Centralized Pre-Trial Proceedings in all three actions.

On September 6, 2013, Defendant filed Motions to Dismiss in this matter and in the *Benson* action that mirrored the Motion to Dismiss that Defendant filed in the *Edge Lofts* action.

On November 18, 2013, Defendant filed a Motion to Consolidate Hearings on Defendant's Motions to Dismiss in the three actions. On November 26, 2013, Judge Mosman granted Defendant's request for consolidated hearings.

On January 6, 2014, Judge Mosman heard oral argument on Defendant's Motions to Dismiss and, among other things: (1) granted Defendant's Motions as to each of the Plaintiffs' CWA claims on the ground that Plaintiffs failed to plead sufficiently that Defendant's products are "consumer products" within the meaning of the CWA, (2) granted Defendant's Motions as to each of the Plaintiffs' UTPA claims on the ground that Plaintiffs failed to plead sufficiently that Defendant's products are "consumer goods" within the meaning of the UTPA, and (3) granted Defendant's Motions as to each of the Plaintiffs' claims for fraud and negligent misrepresentation on the ground that Plaintiffs failed to plead the elements of justifiable reliance

5 - OPINION AND ORDER

and to identify to whom the statements were made with the specificity required by Federal Rule of Civil Procedure 9(b). Judge Mosman also granted each of the plaintiffs leave to amend their Complaints.

On January 21, 2014, Plaintiff in this matter filed a First Amended Complaint in which it alleged claims for (1) strict products liability, (2) negligence, (3) breach of express warranty, (4) violation of the UTPA, (5) fraud, and (6) negligent misrepresentation.

Also on January 21, 2014, the plaintiffs in the *Edge Lofts* action filed a Second Amended Complaint and the plaintiffs in the *Benson* action filed a First Amended Complaint in which each of those plaintiffs asserted the same claims as those asserted by Plaintiff in this action based on facts similar to those alleged by Plaintiff in this action.

On February 24, 2014, Defendant filed nearly identical Motions to Dismiss Claims for Fraud, Negligent Misrepresentation, and Violation of the UTPA in both this matter and the *Benson* action.  On March 5, 2014, Defendant filed a similar Motion to Dismiss in the *Edge Lofts* action.

This Court took Defendant's Motion to Dismiss Plaintiff's claims for fraud, negligent misrepresentation, and violation of the UTPA filed in this action under advisement on March 24, 2014.

On March 21, 2014, Defendant filed a Motion for Summary

Judgment in the *Edge Lofts* action in which it also sought summary judgment as to the plaintiff's claims for violation of the UTPA, negligent misrepresentation, and fraud.

On April 3, 2014, Judge Mosman entered an order in all three actions dissolving the administrative consolidation of the matters.

On April 18, 2014, Judge Mosman issued an Order in the *Edge Lofts* action in which, among other things, he granted Defendant's Motion for Summary Judgment as to Plaintiff's claims for fraud and misrepresentation based on the plaintiff's allegations that Defendant misrepresented the ability of its products to operate at temperatures lower than 230 degrees or to operate in potable water systems containing a certain percentage of chloramines such as the Portland water system.[1]

On May 27, 2014, Judge Simon issued an Opinion and Order in the *Benson* action in which, among other things, he also granted Defendant's Motion to Dismiss the plaintiff's claims for fraud and negligent misrepresentation based on the plaintiff's allegations that Defendant misrepresented the ability of its products to operate at temperatures lower than 230 degrees or to operate in potable water systems containing a certain percentage

---

[1] Judge Mosman denied the Defendant's Motion to Dismiss in the *Edge Lofts* action as moot because it raised the same grounds for dismissal of the plaintiff's UTPA, fraud, and negligent misrepresentation claims as the Defendant's Motion for Summary Judgment.

of chloramines such as the Portland water system.   In addition,

Judge Simon granted Defendant's Motion to Dismiss the plaintiff's

UTPA claim.

## STANDARDS

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.  A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  *Id.* at 556.
> . . .  The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  *Ibid.*  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'"  *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell

Atlantic*, 550 U.S. at 555-56.  The court must accept as true the

allegations in the complaint and construe them in favor of the

plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

    "In ruling on a 12(b)(6) motion, a court may generally

consider only allegations contained in the pleadings, exhibits

attached to the complaint, and matters properly subject to

judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

2012)(citation omitted).  A court, however, "may consider a

writing referenced in a complaint but not explicitly incorporated

8 - OPINION AND ORDER

therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).


## DISCUSSION

Defendant moves to dismiss Plaintiff's claims for violation of the UTPA (Fourth Claim), negligent misrepresentation (Sixth Claim), and fraud (Fifth Claim) as well as Plaintiff's request for punitive damages.

I.   **Plaintiff's UTPA Claim (Fourth Claim)**

Defendant moves to dismiss Plaintiff's Fourth Claim for violation of the UTPA on the grounds that (1) the purchase of Defendant's components by MSI was a commercial transaction rather than a consumer transaction, and, therefore, the UTPA does not apply; (2) Plaintiff has failed to plead sufficient reliance to state a claim under the UTPA; and (3) Plaintiff is not the real party in interest and, therefore, may not bring a claim under the UTPA.

The UTPA provides in pertinent part:

> (1) A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:
>
>                          \* \* \*
>
> > (e) Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate,

goods or services do not have or that a
person has a sponsorship, approval, status,
qualification, affiliation, or connection
that the person does not have.

\* \* \*

(g) Represents that real estate, goods or
services are of a particular standard,
quality, or grade, or that real estate or
goods are of a particular style or model, if
the real estate, goods or services are of
another.

\* \* \*

(t) Concurrent with tender or delivery of any
real estate, goods or services fails to
disclose any known material defect or
material nonconformity.

Oregon courts have long held the UTPA "applies only to
consumer transactions; it does not regulate commercial
transactions." *Investigators, Inc. v. Harvey*, 53 Or. App. 586,
590 (1981). *See also Denson v. Ron Tonkin Gran Turismo, Inc.*,
279 Or. 85, 90 n.4 (1977)(The "policy underpinning" the UTPA is
"protection of consumers."). Courts in this District have
reached the same conclusion. *See, e.g., L & A Designs v. Xtreme
ATVs, Inc.*, No. 03:10-CV-00627-HZ, 2012 WL 1532417, at \*4 (D. Or.
Apr. 30, 2012)("[T]he UTPA is limited to consumer actions.");
*Slep-Tone Entm't Corp. v. Shenanigans Lounge*, No. 6:12-CV-
1236-TC, 2013 WL 1768444, at \*4 (D. Or. Feb. 22, 2013)("Plaintiff
has not alleged that it is a consumer of defendants' products and
thus, I find that plaintiff lacks standing to maintain claims
under the UTPA."), *adopted by Chief District Judge Ann Aiken*,

10 - OPINION AND ORDER

2013 WL 1767727 (D. Or. Apr. 20, 2013)("Despite plaintiff's objections, this court finds no reason to depart from the previous decisions by the judges of this court finding that the UTPA is limited to consumer actions."); *Allegro Corp. v. Only New Age Music, Inc.*, No. 01-790-HU, 2003 WL 23571745, at *16 (D. Or. Jan. 23, 2003)(granting summary judgment to the plaintiff on defendant's counterclaim for violation of the UTPA on the ground that the defendant was not a consumer of the plaintiff's products); *Volm v. Legacy Health Sys.*, 237 F. Supp. 2d 1166, 1175 (D. Or. 2002)(granting summary judgment to the defendant on the plaintiff's UTPA claim on the ground that plaintiff was not a consumer of the defendant's products); *CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d. 1167, 1175 (D. Or. 2001) (granting the defendant's motion to dismiss the plaintiff's UTPA claim on the ground that the plaintiff is not a consumer of the defendant's products); *Oregon Laborers-Emp'r Health & Welfare Trust Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1180 (D. Or. 1998)(same).

The Court notes Plaintiff does not explicitly allege it is a "consumer" of Defendant's products. Indeed, MSI purchased Defendant's products through Ferguson and installed those products in the Condominium in the course of its plumbing business. There is not any allegation that Plaintiff or the condominium owners (Owners) purchased any of Defendant's

11 - OPINION AND ORDER

products.  In addition, the Owners purchased their condominium
units either from the developer, Evergreen M&F, or from prior
owners of the units who purchased them from Evergreen M&F.

The sole allegation in Plaintiff's First Amended Complaint
related to Plaintiff's alleged status as a consumer is that the
Owners of the individual condominiums and "members of Plaintiff,
when buying their individual units, purchased real property as
contemplated by the [UTPA]."  First Am. Compl. at ¶ 68.
Plaintiff relies on *Fowler v. Cooley*, 239 Or. App. 338 (2010), to
support its assertion that the Owners' purchase of their
condominium units is sufficient to establish that the Owners,
and, in turn, Plaintiff are consumers under the UTPA.  In *Fowler*
the plaintiff sought damages under the UTPA arising from the
defendant's sale to the plaintiff of a single-family home that
had a water leak in the basement.  After a bench trial the court
entered a judgment in the plaintiff's favor.  The defendant
appealed on the ground that, among other things, the trial court
erred when it denied the defendant's motion to dismiss the
plaintiff's UTPA claim because the house was not purchased by the
plaintiff for personal, household, or family purposes.  The
Oregon Court of Appeals noted

> the [Oregon] Supreme Court in *Searle v. Exley
> Express*, 278 Or. 535, 540, 564 P.2d 1054 (1977),
> [explained] "[i]f goods are customarily bought by
> a substantial number of purchasers for personal,
> family or household uses and were, in fact, bought
> by the plaintiff for his or someone else's use and

> not for resale, the [UTPA] applies." Thus, *Searle*
> embodies a two-part test:  Is the real estate,
> good, or service at issue customarily purchased by
> a substantial number of people for personal,
> family, or household use (the objective component)
> and was it, in fact, purchased by the plaintiff
> for personal, family, or household use, rather
> than for commercial use or resale (the subjective
> component).

239 Or. App. at 344.  The Oregon Court of Appeals found "[a]

residential home is undoubtedly real estate that is customarily

bought by a substantial number of people for personal, family, or

household use.  Thus, plaintiff easily satisfies the objective

component of the *Searle* test."  *Id.* at 344-45.

Plaintiff asserts *Fowler* supports the proposition that

because the Owners, who are members of Plaintiff, purchased their

units in the Condominium for personal use, they also purchased

the plumbing materials (including Defendant's products) for their

personal use.  According to Plaintiff, therefore, it is a

consumer of Defendant's products for personal, family, or

household uses, and, therefore, Plaintiff has stated a claim

under the UTPA.  Nevertheless, Judge Mosman rejected this same

argument when it was made by the plaintiffs in the *Edge Lofts*

action, and he granted summary judgment in favor of Victaulic on

the ground that the plaintiff had not established the owners'

purchase of the condominium units was sufficient to establish a

purchase of Defendant's consumer goods under the UTPA.  *Edge*

*Lofts v. Victaulic,* 3:13-CV-00492-MO, Hearing Tr. at 43-44

(Apr. 14, 2014).   Judge Simon also rejected this argument in the
*Benson* action and granted Defendant's Motion to Dismiss the
plaintiff's UTPA claim on the ground that

> [w]hat Plaintiff, or to be precise, an individual
> unit owner who is a member of Plaintiff, purchased
> was a living unit (a condominium, or a home) that
> contained plumbing components, among many other
> things.  That purchaser did not purchase the
> plumbing components – at least not under the UTPA
> as that statute has been interpreted by the
> federal courts in this district.

*Benson v. Victaulic*, 3:13-CV-01010-SI, Opin. and Order at 16
(May 27, 2014, docket #76).

The Court agrees with the reasoning of Judges Mosman and
Simon and likewise concludes Plaintiff here has not established
it is a consumer of Defendant's products under the UTPA.   In
particular, the Court looks to *Miller v. Herman*, 600 F.3d 726
(7th Cir. 2010).  Although *Miller* was decided under the Magnuson-
Moss Act, the court's analysis in that case is helpful because
the definition of a "consumer product" under the Magnuson-Moss
Act is similar to the Oregon Supreme Court's definition of
consumer goods under the UTPA in *Searle*.  Moreover, the *Miller*
case involved facts similar to those alleged in this case.  In
*Miller* the plaintiffs (husband and wife) entered into a contract
with builder James G. Herman & Associates for the construction of
a new home.  In mid-June 2003 Herman purchased for the
plaintiffs' home a number of windows and doors manufactured and
warranted by Pella Products.  Herman and subcontractor Joseph

14 - OPINION AND ORDER

Nobilio installed the windows in the plaintiffs' home.  Although
Herman represented to the plaintiffs that the house was
habitable, the Pella windows leaked and allowed water into the
plaintiffs' home.  Ultimately the plaintiffs brought an action
against Herman and Pella that included a claim for violation of
the Magnuson-Moss Act, 15 U.S.C. § 2310, which provides a civil
cause of action for consumers "damaged by the failure of a
supplier, warrantor, or service contractor to comply with any
obligation [under the Act] . . . or under a written warranty,
implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).
Herman moved to dismiss and Pella moved for summary judgment
against the plaintiffs' Magnuson-Moss Act claim on the ground
that the windows installed in the plaintiffs' home were not
"consumer products" within the meaning of the Act.  The trial
court found the plaintiffs

> contracted with Herman for the construction of a
> new home, not for the individual sale of windows.
> Because those windows were intended to be
> integrated into the [plaintiffs'] home, we find
> that they do not constitute "consumer products"
> under the Magnuson-Moss Act, but are instead
> building materials indistinguishable from the real
> property.  Thus, the [plaintiffs] have no valid
> claims under the Magnuson-Moss Act.

*Id.* at 731.  Accordingly, the trial court granted the defendants'
motions.  The plaintiffs appealed.  The Seventh Circuit affirmed
the trial court and noted the Act defines a "consumer product" as
"any tangible personal property which is distributed in commerce

15 – OPINION AND ORDER

and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1). The court noted "[the plaintiffs] did not go to the store and engage in a transaction for windows. Instead, [they] specifically alleged that 'Herman purchased, on behalf of the [plaintiffs], fixed and casement windows and several hinged doors and a slider patio door manufactured by Pella.'" *Id.* at 735. The court found the plaintiffs' circumstances were similar to those described in 16 C.F.R. § 700.1(f),[2] which provides in pertinent part:

> [When] a consumer contracts with a builder to construct a home, . . . the building materials to be used are not consumer products. Although the materials are separately identifiable at the time the contract is made, it is the intention of the parties to contract for the construction of realty which will integrate the component materials.

Ultimately the court concluded the plaintiffs

> contracted with Herman for the construction of a new home. The home was not existing; the windows at issue here were purchased by Herman, a contractor, to install into the home. [The plaintiffs have] not produced any evidence showing a separate contract for the windows, or a separate transaction for them in which [they were] personally engaged. . . . [Thus], the windows are not "consumer products" within the meaning of Magnuson-Moss.

---

[2] The regulations interpreting the Magnuson-Moss Act were promulgated by the Federal Trade Commission (the agency responsible for implementing the Act) after a notice-and-comment period.

*Id.* at 737.

Here neither Plaintiff nor the Owners contracted with Defendant for the plumbing parts at issue. As noted MSI purchased Defendant's products from Ferguson, a third party. The Owners purchased the condominium units from either Evergreen M&F or from previous unit owners. As in § 700.1(f), it was the intention of the Owners to purchase realty that integrated Defendant's component materials rather than to purchase the component materials themselves. There is not any evidence of a separate contract between Plaintiff and Defendant or the Owners and Defendant for the purchase of Defendant's components. On this record, therefore, the Court concludes Plaintiff has not alleged sufficient facts to establish that it is a consumer of Defendant's products as defined in the UTPA. Because the Court concludes the purchase of Defendant's components by MSI was a commercial transaction rather than a consumer transaction and the UTPA, therefore, does not apply to Plaintiff's claim, the Court declines to address Defendant's other grounds for dismissal.

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Fourth Claim for violation of the UTPA. In addition, because Plaintiff has already been given the opportunity to amend its UTPA claim, the Court declines to grant Plaintiff leave to amend its Complaint a second time as to this issue.

II.  **Plaintiff's Claim for Negligent Misrepresentation (Sixth Claim)**

Plaintiff alleges in its Sixth Claim for negligent misrepresentation that Defendant was aware "[p]rior to the installation of [Defendant's] products into the condominium . . . that [Defendant's] products contained an inherent defect" and that Defendant was recklessly indifferent to the risk that its products would fail when exposed to temperatures less than 230 degrees and/or would fail when exposed to chloramines.  First Am. Compl. ¶¶ 90, 93-94.

The Oregon Supreme Court has held claims for negligent misrepresentation "must be predicated on some duty of the negligent actor to the injured party *beyond* the common law duty to exercise reasonable care to prevent foreseeable harm."  *Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 (1992)(emphasis added).  "In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship,' in which the party sought to be held liable had some obligation to pursue the interests of the other party."  *Conway v. Pac. Univ.*, 324 Or. 231, 237 (1996).  Courts in Oregon have concluded such special relationships may arise with, for example, attorneys, physicians, principals in an agent relationship, trustees, "pledgees," and liability insurers "who undertake[] a duty to defend."  *Id.* at 239-40.  In addition, an individual may be in a special relationship with the engineers

18 - OPINION AND ORDER

and architects who they enter into a contract with when the individual "authorize[s] [the engineer or architect] to exercise independent judgment in the [individual's] behalf and in the [individual's] interests," and the individual has the right to rely on the engineer or architect "to achieve a desired outcome or resolution." *Id.* at 239-40.  Oregon courts, however, have made clear that a special relationship does not exist in a business transaction in which "adversarial parties negotiat[e] at arm's length to further their own economic interests." *Onita*, 315 Or. at 161.  Accordingly, the *Onita* court concluded "in arm's-length negotiations, economic losses arising from a negligent misrepresentation are not actionable." *Id.*

Here Plaintiff does not allege in its First Amended Complaint that it was in a special relationship with Defendant nor does Plaintiff allege any facts in its First Amended Complaint from which the Court could infer that Plaintiff and Defendant were in a special relationship.  As noted, MSI rather than Plaintiff or the Owners purchased Defendant's products from a third-party dealer in a typical business transaction.  To the extent that the Owners were an intended beneficiary of that purchase, Plaintiff does not allege, and there are not any facts in the First Amended Complaint to suggest, that MSI's purchase of Defendant's products from Ferguson was anything other than that of an arm's-length transaction between "adversar[ies] in a sales

transaction." *Conway*, 324 Or. at 243.  Although courts have held engineers or architects may be in a special relationship with their clients, Plaintiff does not bring this action on behalf of the Owners against the developer or contractor.  Thus, those cases in which engineers or architects are held to be in a special relationship with their clients are not applicable here.

In addition, to the extent that Plaintiff asserts its First Amended Complaint should be read as contending that Defendant may be liable for negligent misrepresentation because Defendant was a "nongratuitous supplier of information" and, therefore, Defendant owed the Owners as intended beneficiaries of that information a duty to avoid making negligent misrepresentations, the Court finds such an assertion to be unpersuasive.  In *Onita* the Oregon Supreme Court noted some legal scholars "distinguish[] between misrepresentations made by an adversary in a sales transaction and by one who holds out to the general public that he or she supplies information" and suggested the latter may have a duty to avoid making negligent misrepresentations.  315 Or. at 162.  In *Conway*, however, the court explained a nongratuitous supplier of information who may have a duty to avoid making negligent misrepresentations "is someone in the business of supplying information for a fee."  324 Or. at 243.  Plaintiff does not allege any facts in its First Amended Complaint from which the Court could plausibly conclude Defendant was in the business of

supplying information for a fee.

The Court, therefore, concludes Plaintiff has not stated a claim for negligent misrepresentation.[3]  Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Sixth Claim for negligent misrepresentation.  In addition, because Plaintiff has already been given the opportunity to amend its negligent-misrepresentation claim, the Court declines to grant Plaintiff leave to amend its Complaint a second time as to this issue.

## III. Plaintiff's Fraud Claim (Fifth Claim)

Plaintiff alleges in its Fifth Claim for fraud that Defendant knew its products "were not acceptable for use in potable water systems such as the potable water system in the condominium" because they would fail when exposed to temperatures less than 230 degrees and/or to chloramines.  First Am. Compl. at ¶¶ 75, 77-78.  Plaintiff further alleges[4] Defendant did not disclose the risk of failure of its products "to prospective

---

[3] The Court notes Judges Mosman and Simon also dismissed the portion of the plaintiffs' negligent-misrepresentation claims in the *Edge Lofts* and *Benson* actions based on the same facts as those alleged by Plaintiff in this matter.  Judges Mosman and Simon did not dismiss the portions of the plaintiffs' negligent-misrepresentation claims in those actions that were based on warranty claims made by the plaintiffs to Defendant.  Here, however, Plaintiff specifically alleges it did not make any warranty claims.

[4] Plaintiff also makes allegations related to "when consumers submitted warranty claims."  As noted, however, Plaintiff specifically alleges neither it nor the Owners made any warranty claims.  The Court, therefore, concludes Plaintiff cannot base its fraud claims on warranty issues.

purchasers," that Plaintiff "reasonably relied on [Defendant] to disclose" the risk of failure, and that Plaintiff suffered an "ascertainable loss[] of money and property." First Am. Compl. at ¶¶ 80, 86, 88.

Defendant moves to dismiss Plaintiff's fraud claim on the ground that Plaintiff has not pled facts sufficient to establish the reliance element of fraud.

## A. Pleading Standard

Federal Rule of Civil Procedure 8(a) provides: A pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief." "Rule 8's liberal notice pleading standard . . . requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992, at *1 (9th Cir. Feb. 14, 2011). With respect to allegations of fraud, however, Federal Rule of Civil Procedure 9(b) requires all allegations of fraud to be stated "with particularity." In order to satisfy the additional burdens imposed by Rule 9(b), the plaintiff must allege, at a minimum, "the time, place and nature of the alleged fraudulent activities." *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)(citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be

22 - OPINION AND ORDER

specific enough to give defendants notice of the particular

misconduct . . . so that they can defend against the charge and

not just deny that they have done anything wrong.'" *Kearns v.*

*Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)(quoting

*Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

"'Averments of fraud must be accompanied by 'the who, what, when,

where, and how' of the misconduct charged." *Id.* (quoting *Vess v.*

*Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  "A

party alleging fraud must set forth more than the neutral facts

necessary to identify the transaction." *Id.* (quotation omitted).

**B.    Fraud Standard**

To state a claim for fraud under Oregon common law a

plaintiff must allege:

> "(1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its
> falsity or ignorance of its truth; (5) his intent
> that it should be acted on by the person and in
> the manner reasonably contemplated; (6) the
> hearer's ignorance of its falsity; (7) his
> reliance on its truth; (8) his right to rely
> thereon; and (9) his consequent and proximate
> injury."

*Burgdorf v. Weston*, 259 Or. App. 755, 771 (2013)(quoting *Webb v.*

*Clark*, 274 Or. 387, 391 (1976)).

**C.    Analysis**

Although Plaintiff agrees it must plead every element

of fraud "with ultimate facts," Plaintiff contends "reliance is

not required in this case because the basis of Plaintiff's claim

is that [Defendant] knew its products would deteriorate and
degrade . . . and actively concealed this information from the
public, including Plaintiff." Pl.'s Mem. in Opp'n at 6.
Plaintiff states "[t]his is a classic failure to disclose case."
To support its assertion that reliance is not required, Plaintiff
relies on two Oregon UTPA cases: *Sanders v. Francis*, 277 Or. 593
(1977), and *State ex rel. Redden v. Discount Fabrics, Inc.*, 289
Or. 375 (1980). In *Sanders* the Oregon Supreme Court held Oregon
UTPA § 646.608(2) does not require reliance as an element of
causation. In *Redden*, however, the Oregon Supreme Court
specifically distinguished the elements of a UTPA claim under
§ 646.608(2) from those in a common-law fraud claim:

> The elements of common law fraud are distinct and
> separate from the elements of a cause of action
> under the Unlawful Trade Practices Act, and a
> violation of the [UTPA] is more easily shown.
>
> \* \* \*
>
> A review of the UTPA reveals that not all of these
> elements are required in order to recover under
> the act. For example, *the element of reliance is
> notably different.*

289 Or. at 383-84 (emphasis added)(quotation omitted). The
Court, therefore, finds the analysis and conclusion in *Sanders* is
of limited relevance to the analysis of Plaintiff's fraud claim
in this matter.

Plaintiff also relies on *Caldwell v. Pop's Homes, Inc.*,
in which the court held "[s]ilence or nondisclosure can be the

basis for a fraud action.  A party need not make an affirmative statement to be liable in fraud." 54 Or. App. 104, 113 (1981). In *Caldwell* the plaintiff, the buyer of a mobile home, brought, among other things, a fraud claim alleging the seller on consignment (the defendant) failed to advise the plaintiff that the park in which the home was located was being sold and the home would have to be removed.  The court held when "fraud is based on actual concealment, as opposed to simple nondisclosure" a plaintiff need not establish the defendant had "a duty to speak." *Id.*  The court, however, did not hold that a plaintiff is not required to plead or to prove reliance in a failure-to-disclose fraud claim.  In fact, the plaintiff's reliance on the defendant's alleged failure to disclose was not at issue in *Caldwell* because, as the Oregon Court of Appeals specifically noted, "[t]here was evidence that plaintiff purchased [a mobile home] in reliance on the fact that the mobile home was ready for occupancy in a park." *Id.* at 111-12.

According to Defendant, Plaintiff has merely recast the traditional fraud claim asserted in its original Complaint as a failure-to-disclose fraud claim in its First Amended Complaint. Defendant asserts Plaintiff's fraud claim is the kind of failure-to-disclose fraud claim that requires an allegation of reliance. In its original Complaint Plaintiff alleged with respect to its fraud claim that Defendant "expressly represented and/or implied

(through affirmative statements or failures to disclose)":

    a.    That the Victaulic products' characteristics created a permanent, leak-tight triple seal on a variety of piping materials including steel, stainless steel, aluminum, PVC, ductile iron and copper;

    b.    That VICTAULIC's grade E EPDM gasket material is UL classified in accordance with ANSI/NSF 61 for cold (+86°F/+30°C) and hot (+180°F/+82°C) potable water service;

    c.    That the grade E gaskets are recommended for hot water service within a specified temperature range of -30°F/-34°C to +230°F/+110°C;

    d.    That the grade E gaskets are compatible with a variety of dilute acids, oil-free air and many chemical services; and

    e.    That the Victaulic products were warranted to be free from defects in material and workmanship under normal conditions of use and service.

Compl. at ¶¶ 28, 70.  Plaintiff also alleged Defendant's representations were false, that Defendant knew or should have known they were false, that Defendant intended customers to rely on its representations, that Plaintiff justifiably relied on the representations, that Plaintiff had a right to rely on the representations, and that the representations were material "to the determination as to whether to use [Defendant's] products in" the Condominium.  Compl. at ¶¶ 71-78.  At the January 6, 2014, hearing, Judge Mosman concluded Plaintiff failed to plead fraud with sufficient specificity as required under Rule 9(b).  In particular, Judge Mosman noted Plaintiff failed to allege to whom

26 - OPINION AND ORDER

the alleged misrepresentations were made, to allege facts underlying Plaintiff's assertion that it justifiably relied on Defendant's alleged misrepresentations, and to allege facts to support its assertion that the alleged misrepresentations were material.

In its First Amended Complaint Plaintiff alleges Defendant "represented in its Seal Selection Guides, Field Installation Handbooks, Design and Installation Manual and Product Catalogs" that its Grade E gaskets were "recommended for hot water service" up to 230 degrees.  First Am. Compl. at ¶ 13. Plaintiff also alleges Defendant's Seal Selection Guides, Field Installation Handbooks, Design and Installation Manual and Product Catalogs "were published by [Defendant] prior to construction of the condominium and disseminated on the internet through [Defendant's] website" and that Defendant "provided a copy of [its publications] to any person or entity upon request."[5]  *Id*.  Plaintiff also alleges Defendant did not provide any "warnings about the use of Grade E EPDM in water with chloramines."  First Am. Compl. at ¶ 15.  Finally, Plaintiff alleges Defendant knew its products would fail when exposed to water at temperatures less than 230 degrees and/or to chloramines in the water, but Defendant failed to disclose those facts to its

---

[5] Plaintiff does not, however, allege it or the Owners requested or received any of Defendant's publications.

customers.  First Am. Compl. at ¶¶ 77-78, 80.  As noted, however,
Plaintiff does not allege it relied on Defendant's published
guidelines for water temperature or on the fact that Defendant
did not warn of possible failure when its products were exposed
to chloramines.

In *Pearson v. Philip Morris, Inc.*, the Oregon Court of
Appeals addressed allegations of failure-to-disclose fraud in a
similar context.  In *Pearson* the plaintiffs brought a class
action against a cigarette manufacturer and asserted the
defendant violated the UTPA when it, among other things, "both
*affirmatively misrepresented* that its light cigarettes would
inherently deliver low tar and nicotine, and *failed to disclose*
that, in order to receive low tar and nicotine, the smoker would
have to smoke the light cigarettes in a particular way."  257 Or.
App. 106, 119 (2013)(emphasis in original).

> Regarding causation, plaintiffs argued that they
> did not have to prove that they and the putative
> class members had relied on defendant's
> representations that Marlboro Lights were "Lights"
> and had "Lowered Tar & Nicotine" because the
> representations were half-truths. . . .  According
> to plaintiffs, "[t]he half-truth case involves a
> failure to disclose, and [a UTPA] plaintiff need
> not establish reliance when [the defendant]
> fail[ed] to disclose information."  Relying on
> *Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d
> 1003 (1977) . . . plaintiffs argued that they did
> not need to prove that they and the putative class
> members had relied on defendant's representations.

*Id.* at 128.  Although the reliance element under the UTPA differs
from that in fraud, the *Pearson* court's analysis of half-truths,

28 - OPINION AND ORDER

failure to disclose, and generic fraud is instructive.  The trial

court held the plaintiffs would have to prove they had relied on

the defendant's representations in order "to prove that they had

suffered ascertainable losses as a result of defendant's

representations."  *Id.* at 130.  The trial court also concluded

> this case does not involve the type of 'failure to
> disclose' misrepresentation the *Sanders* court
> referred to when it said that in some UTPA cases
> reliance is not an element of causation.
> Plaintiffs allege here that the statement lowered
> tar and nicotine' was misleading because it was a
> half-truth.  They contend that it was false
> because it did not explain that the statement was
> true if the cigarettes were smoked in a certain
> fashion by a machine, but not necessarily if they
> were smoked by a human being.  Plaintiffs' theory
> is that if the full truth had been told, they
> would not have bought the cigarettes at all, or
> would not have paid as much as they did for them.
> Instead, being lulled by the half-truth, they
> bought Marlboro Lights.  The theory still boils
> down to an assertion that what defendant *did* say
> was false.  Such a theory requires proof of
> reliance.

*Id.* at 130 (emphasis in original).  The Oregon Court of Appeals

affirmed the trial court's ruling related to reliance and

distinguished the case from *Sanders* as follows:

> The distinction between misleading actions and
> misleading omissions is not always clear and may
> be malleable.  As another court has recognized in
> the fraud context, "[e]very fraud case based on
> material misrepresentation [can] be turned
> facilely into a material omissions case[.]"  *Beck
> v. Cantor, Fitzgerald & Co., Inc.,* 621 F. Supp.
> 1547, 1556 (N.D. Ill. 1985)(quoted in *State
> Treasurer v. Marsh & McLennan Companies, Inc.,* 241
> Or. App. 107, 119 (2011)). . . .  Plaintiffs
> allege that defendant's representations caused
> them to believe something that was not true and

29 - OPINION AND ORDER

that they acted on that belief.  For that type of
allegation, proof of reliance is required.

*Id.* at 143-44 (citations omitted).

Here Plaintiff has alleged Defendant made affirmative
misrepresentations related to the temperature at which its
products could operate without defect as well as representations
that its products were approved for potable water systems.
Plaintiff, in effect, alleges Defendant told half-truths about
its products and failed to tell the entire truth about the
ability of its products to operate at lower temperatures or in
potable water systems with a certain percentage of chloramines
such as the Portland water system.  These allegations, like those
in *Pearson*, are not the type of "failure-to-disclose"
misrepresentations that the *Sanders* court referred to when it
concluded reliance was not a required element of causation.  As
in *Pearson*, Plaintiff's fraud theory boils down to an assertion
that what Defendant said was false, and, therefore, such a theory
requires proof of reliance, but Plaintiff did not plead reliance.
The Court notes Judges Mosman and Simon each concluded in the
*Edge Lofts* and *Benson* actions that the plaintiffs failed to plead
reliance under Rule 9(b) with respect to Defendant's statements
regarding the suitability of its products for temperatures up to
230 degrees and/or in potable water systems and dismissed those

portions of the plaintiffs' fraud claims.[6]

Accordingly, the Court grants Defendant's Motion to Dismiss Plaintiff's Fifth Claim for fraud.  In addition, because Plaintiff has already been given the opportunity to amend its fraud claim, the Court declines to grant Plaintiff leave to amend its Complaint a second time as to this issue.

## IV.  Punitive Damages

Defendant also moves to strike Plaintiff's request for punitive damages on the ground that punitive damages are available only for Plaintiff's claims for fraud, negligent misrepresentation, and violation of the UTPA.  Plaintiff concedes it may not recover punitive damages on its claims for negligence and strict liability.

Because the Court grants Defendant's Motion to Dismiss Plaintiff's claims for fraud, negligent misrepresentation, and violation of the UTPA, the Court also strikes Plaintiff's claim for punitive damages on the ground that Plaintiff may not recover punitive damages for negligence or strict liability.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant Victaulic

---

[6] Judges Mosman and Simon did not dismiss the portion of the plaintiffs' fraud claims related to the plaintiffs' warranty claims.  As noted, however, here Plaintiff specifically alleges it and the Owners did not submit any warranty claims to Defendant.

Company's Motion (#85) to Dismiss Claims for Fraud [Fifth Claim], Negligent Misrepresentation [Sixth Claim], and Violation of the UTPA [Fourth Claim] and **GRANTS** Defendant's Motion (#85) to Strike Punitive Damages.

Thus, this matter will proceed only as to Plaintiff's First Claim for strict liability and Second Claim for negligence according to the case-management schedule previously set by the Court.

IT IS SO ORDERED.

DATED this 6th day of June, 2014.


ANNA J. BROWN
United States District Judge

32 - OPINION AND ORDER