IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AVENUE LOFTS CONDOMINIUMS
OWNERS' ASSOCIATION, an
Oregon nonprofit corporation,

        Plaintiff,

v.

VICTAULIC COMPANY, a foreign
corporation; HOWARD S. WRIGHT
CONSTRUCTION CO., a foreign
corporation; FERGUSON
ENTERPRISES, INC., aka
FERGUSON ENTERPRISES, INC., a
foreign corporation; and MSI
MECHANICAL SYSTEMS, INC., an
Oregon corporation,

        Defendants.

3:13-CV-01066-BR

OPINION AND ORDER

MICHELLE K. McCLURE
STUART K. COHEN
Landye Bennett Blumstein, LLP
3500 Wells Fargo Center
1300 S.W. Fifth Avenue
Suite 3500
Portland, OR 97201
(503) 224-4100

1 - OPINION AND ORDER

**RICHARD N. SIEVING**
**JENNIFER L. SNODGRASS**
The Sieving Law Firm, A.P.C.
100 Howe Avenue
Suite 220N
Sacramento, CA 95825
(916) 444-3366

   Attorneys for Plaintiff

**ANNE COHEN**
**SHARLEI C. HSU**
Smith Freed & Eberhard
111 S.W. Fifth Avenue
Suite 4300
Portland, OR 97204
(503) 227-2424

   Attorneys for Defendants Victaulic Company and Ferguson
   Enterprises, Inc.

**THOMAS A. LARKIN**
Stewart Sokol & Larkin LLC
2300 S.W. First Avenue, Suite 200
Portland, OR 97201
(503) 221-0699

   Attorneys for Defendant Howard S. Wright Construction
   Company

**JAMES M. DAIGLE**
**JESSE C. ORMOND**
Stewart Sokol & Larkin LLC
2300 S.W. First Avenue, Suite 200
Portland, OR  97201
(503) 221-0699

**BARRY W. DOD**
Elkins, Zipse & Mitchell
4380 S.W. Macadam Avenue
Portland, OR 97239
(503) 892-2072

DAVID A. HYTOWITZ
Law Offices of Kathryn Reynolds Morton
P.O. Box 4400
Portland, OR 97208-4400
(503) 736-7964

       Attorneys for Defendant MSI Mechanical Systems, Inc.

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff's Motion (#146) for Partial Summary Judgment as to Defendant Victaulic Company's Liability for Manufacturing Defective Victaulic 606 Couplings, Victaulic's Motion (#167) to Strike Portions of Supplemental Declaration of Baron V. Adams in Support of Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment and the Trial Testimony of Dr. Gerald Fuller in the Edge Lofts Matter and Benson Matter, and Victaulic's Objections (#174) to the Second Supplemental Declaration of Baron V. Adams in Support of Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment.

    For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment, **DENIES as moot** Victaulic's Motion to Strike, and **DENIES as moot** Victaulic's Objections.

## BACKGROUND

    Plaintiff Avenue Lofts Condominiums Owners' Association is an Oregon nonprofit corporation and the governing body of the

3 - OPINION AND ORDER

Avenue Lofts Condominium (the Condominium).

Defendant Victaulic Company is a New Jersey corporation that at all relevant times manufactured, marketed, and supplied valves, pipe couplings, gaskets, and fittings to suppliers and installers for use in their businesses. Victaulic manufactured and sold certain products including, but not limited to, butterfly valves, pipe couplings, gaskets, "Pressfit, and T fittings" that included or contained ethylene propylene diene monomer (EPDM) rubber and/or nitrile rubber (the Victaulic products).

At some point before 2004 developer Evergreen M&F, LLC, hired Defendant Howard S. Wright Construction (HSW) as general contractor for the Condominium. HSW contracted with Defendant Mechanical Systems, Inc. (MSI) to install the plumbing systems for the Condominium. MSI purchased plumbing components (including products manufactured by Victaulic) from third-party distributor Ferguson Enterprises, Inc. MSI installed Victaulic's products in the Condominium as part of the plumbing system.

Some or all of the products manufactured and sold by Victaulic and others that were installed at the Avenue Lofts by MSI were designated as "grade E," and, according to Plaintiff, recommended for hot-water service in domestic potable water systems. Plaintiff alleges, "[h]owever, at the time of construction of the Avenue Lofts, Victaulic did not recommend

that products containing nitrile be used in potable water
system[s]."  Third Am. Compl. at ¶ 21.

Plaintiff alleges:

> The plumbing system installed throughout the
> Avenue Lofts includes products manufactured by
> Victaulic and others that are prematurely
> deteriorating and failing, thus causing the
> Victaulic and others' products (collectively, the
> "plumbing products") to fail to perform as
> intended.  Among other things, the plumbing
> products are cracking, becoming brittle and/or
> softening, and are disintegrating.  The
> deterioration of the plumbing products has
> resulted in the release of particulate matter into
> the domestic potable water system and damage to
> the plumbing products and in pipe-joint seal
> failings, which have caused water intrusion and
> property damage to components of the Avenue Lofts'
> General Common Elements, other than the plumbing
> products themselves, to the potable water itself,
> and the interiors of the units.  As premature
> deterioration and failure of the plumbing products
> continues, further releases of particulate matter
> and widespread water intrusion and property damage
> will occur.

Third Am. Compl. at ¶ 22.

On June 25, 2013, Plaintiff filed the Complaint against
Victaulic in this action in which it brought claims for
(1) strict products liability; (2) negligence; (3) breach of
express warranty; (4) violation of Oregon's Consumer Warranty Act
(CWA), Oregon Revised Statute § 72.8180; (5) violation of
Oregon's Unlawful Trade Practices Act (UTPA), Oregon Revised
Statute § 646.608(1)(e), (g), and (t); (6) fraud; and
(7) negligent misrepresentation.

Before Plaintiff filed this action, Plaintiff's counsel

5 – OPINION AND ORDER

filed an action against Victaulic on February 25, 2013, on behalf of Edge Lofts Master Condominium Association and Edge Lofts Condominium Association (the *Edge Lofts* action) in Multnomah County Circuit Court in which the plaintiffs alleged claims against Victaulic based on facts similar to those alleged by Plaintiff against Victaulic in this case. On March 22, 2013, Victaulic removed the matter to the United States District Court for the District of Oregon, and the case was assigned to Judge Michael Mosman (3:13-CV-00492-MO). On June 10, 2013, Victaulic filed a motion to dismiss the *Edge Lofts* action in which it sought, among other things, dismissal of the plaintiffs' claims for violation of the UTPA, fraud, and negligent misrepresentation.

Plaintiff's counsel also filed an action against Victaulic on June 17, 2013, on behalf of Benson Tower Condominium Owners Association (the *Benson* action) in the United States District Court for the District of Oregon (3:13-CV-01010-SI) in which the plaintiff alleged claims against Victaulic based on facts similar to those alleged by Plaintiff against Victaulic in this matter and similar to the facts alleged by the plaintiffs in the *Edge Lofts* action. The *Benson* action was assigned to Judge Michael Simon.

On July 29, 2013, Victaulic filed Motions for Centralized Pre-Trial Proceedings in each of the above three cases.

On August 7, 2013, Judge Mosman granted Victaulic's Motions for Centralized Pre-Trial Proceedings in all three actions.

On September 6, 2013, Victaulic filed Motions to Dismiss in this matter and in the *Benson* action that mirrored the motion to dismiss that Victaulic filed in the *Edge Lofts* action.

On November 18, 2013, Victaulic filed a Motion to Consolidate Hearings on Victaulic's Motions to Dismiss in the three actions. On November 26, 2013, Judge Mosman granted Victaulic's request for consolidated hearings.

On January 6, 2014, Judge Mosman heard oral argument on Victaulic's Motions to Dismiss in all three cases and, among other things: (1) granted Victaulic's Motions as to all of the plaintiffs' CWA claims, (2) granted Victaulic's Motions as to all of the plaintiffs' UTPA claims, and (3) granted Victaulic's Motions as to each of the plaintiffs' claims for fraud and negligent misrepresentation on the ground that the plaintiffs failed to plead those claims with the specificity required by Federal Rule of Civil Procedure 9(b). Judge Mosman also granted all of the plaintiffs leave to amend their Complaints.

On January 21, 2014, Plaintiff in this matter filed a First Amended Complaint against Victaulic in which it alleged claims for (1) strict products liability, (2) negligence, (3) breach of express warranty, (4) violation of the UTPA, (5) fraud, and (6) negligent misrepresentation.

Also on January 21, 2014, the plaintiffs in the *Edge Lofts* action filed a Second Amended Complaint and the plaintiff in the *Benson* action filed a First Amended Complaint in which all of those plaintiffs asserted claims similar to those asserted by Plaintiff in this action.

On February 24, 2014, Victaulic filed Motions to Dismiss Claims for Fraud, Negligent Misrepresentation, and Violation of the UTPA in both this matter and the *Benson* action.  On March 5, 2014, Victaulic filed a similar motion to dismiss in the *Edge Lofts* action.

On March 21, 2014, Victaulic filed a motion for summary judgment in the *Edge Lofts* action in which it sought summary judgment as to the plaintiffs' claims for violation of the UTPA, negligent misrepresentation, and fraud.

On April 3, 2014, Judge Mosman entered an Order in all three actions dissolving the administrative consolidation of the matters.

On April 18, 2014, Judge Mosman issued an order in the *Edge Lofts* action in which, among other things, he granted Victaulic's motion for summary judgment as to the plaintiffs' claims for fraud and misrepresentation.[1]

---

[1] Judge Mosman denied Victaulic's motion to dismiss in the *Edge Lofts* action as moot because it raised the same grounds for dismissal of the plaintiffs' UTPA, fraud, and negligent misrepresentation claims as Victaulic's motion for summary judgment filed in that matter.

8 – OPINION AND ORDER

On May 16, 2014, Judge Mosman held a Pretrial Conference in the *Edge Lofts* action and, among other things, granted Victaulic's motion for summary judgment as to the plaintiffs' claim for breach of express warranty.

On May 27, 2014, the *Edge Lofts* matter proceeded to a jury trial before Judge Mosman.

On May 27, 2014, Judge Simon issued an opinion and order in the *Benson* action in which, among other things, he granted Victaulic's motion to dismiss the plaintiff's claims for fraud and negligent misrepresentation. In addition, Judge Simon granted Victaulic's motion to dismiss the plaintiff's UTPA claim.

On June 3, 2014, the jury returned a verdict in the *Edge Lofts* matter in which, among other things, they found Victaulic "manufacture[d] a defective product" that caused harm to the plaintiffs.

On June 6, 2014, this Court entered an Opinion and Order in this action granting Victaulic's Motion to Dismiss Plaintiff's claims for fraud, negligent misrepresentation, and violation of the UTPA. The Court, therefore, noted this matter would go forward only as to Plaintiff's First Claim for strict liability and Second Claim for negligence.

On June 10, 2014, the plaintiff in the *Benson* action filed a second amended complaint against Victaulic in which it alleged claims for strict products liability, negligence, breach of

9 - OPINION AND ORDER

express warranty, fraud, and negligent misrepresentation.

On June 17, 2014, Judge Mosman entered a judgment in the *Edge Lofts* matter.[2]

On September 15, 2014, Judge Simon entered an order in the *Benson* action in which he noted, among other things, that the plaintiff had withdrawn its claim for negligent misrepresentation.

On October 15, 2014, Judge Simon issued an opinion and order in the *Benson* action in which he denied Victaulic's motion for summary judgment as to the plaintiff's claims for strict products liability and negligence and granted Victaulic's motion for summary judgment as to the plaintiff's claims for breach of express warranty and fraud.

On November 24, 2014, Plaintiff in this matter filed a Second Amended Complaint against Victaulic, HSW, Ferguson, and MSI.  Plaintiff alleged a claim for strict products liability against all Defendants, a claim for negligence against Victaulic, and a claim for breach of express warranty against Victaulic.

On January 6, 2015, the *Benson* action proceeded to trial.

On January 15, 2015, the *Benson* jury returned a verdict finding, among other things, that Victaulic "manufacture[d] a

---

[2] On July 18, 2014, the plaintiffs in *Edge Lofts* filed a Notice of Appeal with the Ninth Circuit.  On January 9, 2015, the Ninth Circuit issued a Mandate dismissing the appeal with prejudice pursuant to a stipulation by the parties.

defective product" that caused damage to the plaintiff.

On January 16, 2015, Judge Simon entered a judgment in the
*Benson* matter.[3]

On February 10, 2015, Plaintiff filed a Third Amended
Complaint in this matter against Victaulic, HSW, Ferguson, and
MSI. Plaintiff alleged a claim for strict products liability
against all Defendants; a claim for negligence against Victaulic;
a claim for breach of express warranty against Victaulic; and
claims for negligence against Ferguson, HSW, and MSI.

On February 20, 2015, Plaintiff filed a Motion for Partial
Summary Judgment as to Defendant Victaulic Company's Liability
for Manufacturing Defective Victaulic 606 Couplings. On April 7,
2015, Victaulic filed a Motion to Strike Portions of Supplemental
Declaration of Baron V. Adams in Support of Plaintiff's Reply in
Support of Plaintiff's Motion for Partial Summary Judgment and
the Trial Testimony of Dr. Gerald Fuller in the Edge Lofts Matter
and Benson Matter.

On June 19, 2015, the Court heard oral argument on
Plaintiff's Motion for Partial Summary Judgment and Victaulic's
Motion to Strike. The Court directed Plaintiff to file no later
than July 10, 2015, a supplemental brief specifying each fact

---

[3] On February 10, 2015, Victaulic filed a Notice of Appeal
to the Ninth Circuit in the *Benson* matter. On May 14, 2015,
Victualic filed an Amended Notice of Appeal.

that Plaintiff contends was necessarily found by the *Benson* and *Edge Lofts* juries as part of their general verdicts of "a defective product." The Court directed Victaulic to file a response no later than July 24, 2015.

The Court took both Motions in this matter under advisement on July 24, 2015.


### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I.   **Standards**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## II.  Offensive, Nonmutual Issue Preclusion

In its Motion for Partial Summary Judgment Plaintiff asserts:

> [T]wo separate juries in two separate Oregon cases have determined that Victaulic's 606 couplings containing EP-12 gaskets are defective.  This litigation involves the same defendant, Victaulic, the same defective Victaulic 606 couplings, and the same defective Victaulic chemical formula for EP-12.  Because two separate juries have found that Victaulic's 606 couplings are defective, the court should preclude Victaulic from re-litigating this issue for a third time, and grant Plaintiff's motion for partial summary judgment.[4]

Pl.'s Mot. at 2-3.  Plaintiff, therefore, requests the Court to apply offensive, nonmutual issue preclusion[5] to prohibit Victaulic from litigating in this action whether Victaulic's 606 couplings were a defective product based on the juries' verdicts in the *Benson* and *Edge Lofts* actions.

The Supreme Court and Ninth Circuit have noted offensive, nonmutual issue preclusion prevents "a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff."  *Parklane Hosiery Co. v.*

---

[4] Plaintiff moves for summary judgment as to liability only and concedes further litigation is necessary on the issue of damages.

[5] Although the parties refer to this as offensive, nonmutual collateral estoppel, the Ninth Circuit "has [in recent years generally] used the term[] . . . 'issue preclusion.'"  *Syverson v. Int'l Business Mach. Corp.*, 472 F.3d 1072, 1078 n.8 (9th Cir. 2007)(quoting *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 n.4 (9th Cir. 2000)).  Thus, this Court will use the term "issue preclusion."

*Shore*, 439 U.S. 322, 329 (1979). *See also State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 713 n.3 (9th Cir. 2005)(noting offensive, nonmutual issue preclusion involves "a plaintiff seek[ing] to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against a different party"). In *Parklane Hosiery* the Supreme Court sanctioned the use of offensive, nonmutual issue preclusion and granted to trial courts "broad discretion to determine when it should be applied." 439 U.S. at 331.

The Ninth Circuit has made clear that

> offensive nonmutual issue preclusion is appropriate only [when]: (1) there was a full and fair opportunity to litigate the identical issue in the prior action. . .; (2) the issue was actually litigated in the prior action. . . ; (3) the issue was decided in a final judgment . . . ; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Syverson*, 472 F.3d at 1078 (citations omitted). In addition, the

> grant of "broad discretion" to trial courts provides those courts the authority to take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual issue preclusion, even where the above-listed standard prerequisites are met. The potential shortcomings or indices of unfairness . . . include whether (1) the plaintiff had the incentive to adopt a wait and see attitude in the hope that the first action by another plaintiff would result in a favorable judgment" which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as

> preclusive are inconsistent with the latter or
> each other, suggesting that reliance on a single
> adverse judgment would be unfair; and, (4) the
> defendant might be afforded procedural
> opportunities in the later action that were
> unavailable in the first "and that could readily
> cause a different result.

*Id.* at 1078-79 (citations omitted).

The parties do not dispute that Victaulic is the same party as the defendant in the *Edge Lofts* and *Benson* actions. Victaulic, however, asserts the judgments in *Benson* and/or *Edge Lofts* are not final and, in any event, the issue in this action is not the same as the issue in the *Edge Lofts* and *Benson* actions. Victaulic also asserts application of offensive, nonmutual issue preclusion would be unfair to Victaulic. Plaintiff disagrees with Victaulic's assertions.

### A. The judgments in the *Benson* and *Edge Lofts* actions are final for purposes of offensive, nonmutual issue preclusion.

Victaulic asserts the issue of its liability was not "decided in a final judgment" in *Benson* and/or *Edge Lofts* because those matters are on appeal. As noted, however, the Ninth Circuit dismissed the appeal in the *Edge Lofts* action with prejudice pursuant to stipulation of the parties. Accordingly, the *Edge Lofts* action has been concluded.

In addition, courts have held an issue "actually litigated and determined by a valid judgment . . . binds the same parties in any subsequent action . . . even where the first, or

16 - OPINION AND ORDER

issue preclusive, judgment is still on appeal when the second action occurs." *In re Kane*, 254 F.3d 325, 328 (1st Cir. 2001) (citing *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 845-846 (10th Cir. 1994)). *See also Dixon v. Wallowa County*, 336 F.3d 1013, 1020 (9th Cir. 2003)(courts generally do not apply issue preclusion to cases in which there has not been a final judgment "with the concomitant right to appeal" entered); *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611 (N.D. Cal. 2011)(court declined to permit offensive, nonmutual issue preclusion because the first action "ended in settlement rather than a final judgment with the right to appeal"). In *Benson* the court entered a final judgment with the concomitant right to appeal. The fact that an appeal is pending in *Benson* does not mean the judgment in that matter is not final for purposes of application of offensive, nonmutual collateral estoppel. Accordingly, the Court concludes the existence of a pending appeal in the *Benson* matter is not a reasonable basis for declining to exercise offensive, nonmutual issue preclusion.

**B.    The issue in this matter is not sufficiently similar to the issues decided by the juries in the *Benson* and/or *Edge Lofts* actions.**

Plaintiff asserts Victaulic had a full and fair opportunity in the *Benson* and *Edge Lofts* matters to litigate the same issue being litigated in this action because in both of those cases the plaintiffs also asked the juries to determine

17 - OPINION AND ORDER

whether Victaulic's 606 couplings were defective, Victaulic
thoroughly litigated that issue, and the juries returned verdicts
finding Victaulic had manufactured "a defective product."
Specifically, Plaintiff states in its Motion that "[i]n the *Edge
Lofts* and *Benson Tower* cases, the plaintiffs alleged that
Victaulic's 606 couplings were defective and caused damage to the
condominiums.  Those 606 couplings involved are the identical
couplings at issue in this litigation.  Those earlier lawsuits
further concerned the same impact of chloramines upon the same
Victaulic products."  Pl.'s Mot. at 7.

As Victaulic points out in its Response to Plaintiff's
Motion, however, here Plaintiff alleges only that Victaulic's 606
couplings were defective whereas in *Benson* and *Edge Lofts* the
plaintiffs alleged Victaulic's 606 couplings as well as other
Victaulic products were defective.  For example, the final jury
instructions in *Benson* contained the following relevant
stipulated facts:

> The parties have agreed to certain facts, and you
> should treat these facts as having been proved.
> The facts agreed to by the parties are as follows:
>
> 1.   Plaintiff is an owner association for the
> Benson Tower Condominium ("Condominium").
>
> 2.   Defendant Victaulic Company ("Victaulic")
> manufactures joining devices and valves, and
> specifically the Victaulic Products installed at
> the Condominium.
>
> * * *

9.   As part of the domestic plumbing system at the Condominium, the following kinds of Victaulic Products were installed in the Condominiums:

a.   Series 608 style butterfly valves;

b.   Series 300 MasterSeal valves;

c.   Style 606 couplings;

d.   Style 607 couplings; and

e.   Style 77 couplings.

*Benson* 3:13-CV-01010-SI, Docket No. 270 at 10-11.  At trial the 606 couplings and the 608 valves were both at issue in the plaintiff's product-liability claim.  On the verdict form the jury in *Benson* was asked only if Victaulic manufactured "*a* defective product" and whether Victaulic's "defective product caused damage to the plaintiff."  *Benson* 3:13-CV-01010-ST, Docket No. 274 at 2 (emphasis added).  Although the jury awarded the plaintiff the full amount of damages sought, the jury was not asked to determine and did not indicate whether either or both of the two products at issue were defective.

In *Edge Lofts* the pretrial order included the following agreed fact:

There are a total of at least 5 separate kinds of Victaulic Components (one (1) valve and four (4) couplings) [that] were installed in the Condominiums:

- The series 608 style butterfly valve;

- The style 606 coupling (and gasket);

- The style 607 coupling (and gasket);

- The style 77 coupling (and gasket); and,

- The Pressfit components.

*Edge Lofts* 3:13-CV-00492-MO, Docket No. 208 at 4. The
plaintiffs' product-liability claim in the pretrial order is
stated entirely in terms of "Victaulic's *products*" as defective.
*Id.* at 7-8 (emphasis added). During closing arguments the
plaintiffs and Victaulic discussed both the 606 and 608 products.
As in *Benson*, the verdict form in *Edge Lofts* included only a
general strict-liability question. The jury found Victaulic
"manufacture[d] *a* defective product" and its "defective product
cause[d] harm to Plaintiffs." *Edge Lofts* 3:13-CV-00492-MO Docket
No. 297 at 2 (emphasis added). The jury, however, did not award
the plaintiffs all of the damages they sought in that matter, and
Plaintiff does not offer any explanation for the lesser amount of
damages awarded in *Edge Lofts*.

Despite the fact that the *Benson* and *Edge Lofts* actions
included more products manufactured by Victaulic than the 606
coupling at issue in this matter and the verdicts in those
matters were general verdicts that did not delineate the
defectiveness of any particular Victaulic product, Plaintiff,
nevertheless, asserts the jury verdicts in *Benson* and *Edge Lofts*
should be considered a finding that all of the Victaulic products
at issue in those matters (including the 606 couplings at issue
here) were defective. Specifically, Plaintiff contends the 606

20 - OPINION AND ORDER

couplings and the 608 valves contained the "defective EPDM" rubber manufactured with Victaulic's EP-12 formula. Plaintiff asserts "[b]ecause the defect arises from Victaulic's EPDM [EP-12], which degrades in chloramine treated municipal water, *any* Victaulic part containing that EPDM is necessarily defective." Pl.'s Reply at 9 (emphasis in original). Finally, Plaintiff argues "[t]wo juries agreed. They did not need to itemize which specific part was defective - they concluded that both parts containing EPDM [specifically EP-12] were defective." *Id.*

As Victaulic notes in its Supplemental Brief, however, EPDM (specifically Victaulic's formulation EP-12) is not a "product." It is a component that Victaulic includes in some of its products. Plaintiff did not ask for summary judgment as to EP-12 or EPDM, but rather as to a specific product: the 606 couplings. In addition, as Victaulic noted at oral argument, the jury verdict in *Edge Lofts* leads to a reasonable inference that the jury did not find all of Victaulic's products (all of which contained EP-12) at issue in that matter were defective because the jury awarded significantly less than the full damages that the plaintiffs sought. Although the jury may have believed all of Victaulic's products were defective even if they did not cause as much damage as the plaintiffs asserted, it is equally likely that the jury did not find all of Victaulic's products at issue were defective.

21 - OPINION AND ORDER

In the *Benson* action the plaintiff made the same argument that Plaintiff asserts here and brought a motion in limine seeking to prohibit Victaulic from offering evidence of liability with respect to its products on the basis that the jury in *Edge Lofts* found Victaulic manufactured "a defective product." At the pretrial conference in *Benson* Victaulic pointed out there were not any "actual[] products that were listed on the verdict form" in *Edge Lofts* and there "isn't any way . . . to figure out how the jury came up with the number that it came up with." *Benson*, 3:13-CV-01010-SI, Docket No. 237 (Pretrial Conf.), Tr. at 41. Moreover, although there was some overlap in the products at issue, Victaulic noted "there were different products at issue in" *Edge Lofts* than those at issue in *Benson*. Judge Simon denied the plaintiff's motion in limine on the ground that the "*Edge Lofts* matter involved some . . . products that are not present in this action." *Benson*, 3:13-CV- 01010-SI, Docket No. 236 at 3.

In *Syverson* the Ninth Circuit addressed a circumstance in which a decision was reached on two bases: one that directly applied to the case at issue and one that did not apply to the case at issue. The court concluded the issues were "not sufficiently identical . . . for offensive nonmutual issue preclusion to apply." 472 F.3d at 1081. The Ninth Circuit explained:

Several factors bear on the question of whether

the issue decided in *Thomforde II* is sufficiently
similar to the one raised here, including whether
there is a "substantial overlap between the
evidence or argument . . . advanced" in both
proceedings, whether "new evidence or argument
involve[s] the application of the same rule of
law" as applied in the earlier decided action, and
the degree to which the claims advanced in both
actions are closely related.

IBM maintains that *Thomforde II* should not have
preclusive effect here because the Eighth
Circuit's holding in that case rested on *two* bases
- "the lack of clarity in the Agreement" and
"IBM's declination to tell Thomforde what it meant
by the language." *See Thomforde II*, 406 F.3d at
504. The second consideration is particular to
the individual plaintiff in *Thomforde* and absent
here.

It is far from clear exactly what significance the
*Thomforde II* panel gave to IBM's refusal to
clarify the SGRA Agreement. The bulk of the
opinion is devoted to explaining why the language
of the agreement lacks clarity. *Id.* at 503-04.
The significance of IBM's refusal to explain the
terms of the agreement to Thomforde is not
analyzed. Nevertheless, the Eighth Circuit did
point to that refusal in its final summary of the
grounds for its decision. That being so, we
cannot conclude that this distinct set of facts,
applicable to the individual plaintiff in
*Thomforde* but not to the named plaintiffs or the
putative class in this case, had no role in the
Eighth Circuit's ultimate conclusion that the
waiver was invalid. . . . It is . . . rather
unlikely that IBM's declination to clarify the
agreement played a material role in Eighth
Circuit's determination. With no way to verify
this hunch, however, we decline to so assume.

472 F.3d at 1080-81 (quotation omitted).

    Here, as in *Syverson*, there is not any way for this

Court to verify whether the juries in the *Benson* and/or *Edge*

*Lofts* matters specifically found Victaulic's 606 coupling to be a

23 - OPINION AND ORDER

defective product.   Thus, as a matter of fairness and in the
exercise of the Court's discretion, the Court concludes Plaintiff
has not established the issue in this matter is the same issue
decided in the *Benson* and/or *Edge Lofts* actions.

Accordingly, the Court denies Plaintiff's Motion for
Partial Summary Judgment.

### VICTAULIC'S MOTION (#167) TO STRIKE AND OBJECTIONS (#174)

In its Motion to Strike Victaulic moves to strike paragraph
two of the Supplemental Declaration of Baron V. Adams in Support
of Plaintiff's Reply and to strike "any reference to" the trial
testimony of Dr. Gerald Fuller in the *Edge Lofts* and *Benson*
actions "as evidence that  the 606 couplings at issue in this
matter are deteriorating and  releasing black particulate into
the plumbing system."  In its Objections to the Second
Supplemental Declaration of Baron V. Adams, Victaulic objects to
the Second Supplemental Declaration of Baron Adams in Support of
Plaintiff's Reply and the Declaration of Stuart Cohen in Support
of Plaintiff's Opposition to Victaulic's Motion to Strike as
untimely.

Each of the Declarations to which Victaulic objects involves
testimony and/or evidence related to whether Victaulic's 606
couplings are deteriorating and releasing black particulate into
the plumbing system in the Avenue Lofts condominiums.  The Court,

24 - OPINION AND ORDER

however, denied Plaintiff's Motion for Partial Summary Judgment solely on the ground that Plaintiff has not established the juries in the *Benson* and/or *Edge Lofts* actions specifically decided Victaulic's 606 couplings were a defective product.   In reaching that conclusion, the Court did not consider the Declarations or trial testimony at issue in Victaulic's Motion to Strike and Objections.

Accordingly, the Court denies as moot Victaulic's Motion to Strike and Objections.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion (#146) for Partial Summary Judgment as to Defendant Victaulic Company's Liability for Manufacturing Defective Victaulic 606 Couplings, **DENIES as moot** Victaulic's Motion (#167) to Strike Portions of Supplemental Declaration of Baron V. Adams in Support of Plaintiff's Reply in Support of Plaintiff's Motion for Partial Summary Judgment and the Trial Testimony of Dr. Gerald Fuller in the Edge Lofts Matter and Benson Matter, and **DENIES as moot** Victaulic's Objections (#174) to the Second Supplemental Declaration of Baron V. Adams in Support of Plaintiff's Reply in

Support of Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

DATED this 24th day of September, 2015.

_____
ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER